IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Joel and Kendall Davis, )<br>)<br>Plaintiffs )<br>)<br>)<br>VS. )<br>)<br>Nationstar Mortgage, LLC DBA Mr. Cooper,)<br>AmWest Funding Corp fka PMAC Lending )<br>Services, Inc., State Farm Fire and Casualty )<br>Company, and Safeguard Properties )<br>Management, LLC, Marriott Bonvoy )<br>Boutiques, LLC, Individually, Jointly and )<br>Severally )<br>Defendants ) | CIVIL ACTION NO. 3:24-cv-3356-SAL<br><br>COMPLAINT AND JURY DEMAND |

# COMPLAINT

COMES NOW, Plaintiffs Joel and Kendall Davis (hereinafter "Plaintiffs") by and through their undersigned counsel, and hereby files this Complaint against Defendants Nationstar Mortgage, LLC DBA Mr. Cooper (hereinafter "Mr. Cooper" or "Defendant 1"), AmWest Funding Corporation FKA PMAC Lending Services, Inc. (hereinafter "AmWest" or "Defendant 2"), State Farm Fire and Casualty Company (hereinafter "State Farm" or "Defendant 3", Safeguard Properties Management, LLC (hereinafter "Safeguard" or "Defendant 4"), and Marriott Bonvoy Boutiques, LLC, (hereinafter "Marriott" or "Defendant 5"), individually, jointly and severally, and shows to the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Joel Davis is an individual citizen of the State of South Carolina, with a residential address of 271 Danby Court, Columbia, South Carolina 29212 and is subject to the jurisdiction of this Court.

1

2. Plaintiff Kendall Davis is an individual citizen of the State of South Carolina, with a residential address of 271 Danby Court, Columbia, South Carolina 29212 and is subject to the jurisdiction of this Court.

3. Defendant Nationstar Mortgage, LLC DBA Mr. Cooper (hereinafter "Nationstar") is a limited liability company, formed and operating under the laws of the State of Delaware, with a principal office address registered with the State of South Carolina Secretary of State's office listed care of Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina, 29169.

4. Defendant AmWest Funding Corporation FKA PMAC Lending Services, Inc. (hereinafter "AmWest") is a limited liability company, formed and operating under the laws of the State of California, with a principal office address registered with the State of South Carolina Secretary of State's office listed care of Incorp Services, Inc., 317 Ruth Vista Road, Lexington, South Carolina 29073.

5. Defendant State Farm Fire and Casualty Company (hereinafter "State Farm"), upon information and belief, is a subsidiary corporation owned by State Farm Mutual Automobile Insurance Company, formed and operating under the laws of the State of Illinois, with a principal office address of One State Farm Plaza, Bloomington, IL 61710. There are no entities by this name registered with the South Carolina Secretary of State's Office as of the date of the filing of this complaint.

6. Defendant Safeguard Properties Management, LLC (hereinafter "Safeguard") is a limited liability company, formed and operating under the laws of the State of Delaware, with a principal office address registered with the State of South Carolina Secretary of State's office

listed care of Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169.

7. Defendant Marriott Bonvoy Boutiques, LLC (hereinafter "Marriott") upon information and belief, is a subsidiary limited liability corporation owned by Marriott International, Inc., formed and operating under the laws of the State of Delaware, with a principal office address registered with the State of South Carolina Secretary of State's office listed care of CT Corporation Service Company, 2 Office Park Court, Columbia, South Carolina, 29223. There are no entities by this name registered with the South Carolina Secretary of State's Office as of the date of the filing of this complaint, though the name of Defendant has been reserved by with a filing by the corporation in the State of South Carolina Secretary of State's Office as of May 7th, 2024.

8. This Court's jurisdiction in this case is proper, pursuant to 28 U.S.C. S. 1332, in that there is complete diversity of citizenship between Plaintiffs and all Defendants named in this action, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. The events giving rise to this litigation occurred in Lexington County, South Carolina, and the property subject to Plaintiffs' claims at issue in this Complaint is situated in Lexington County, South Carolina.

10. Venue is proper pursuant to U.S.C. S. 1391.

## BACKGROUND/FACTS

11. Plaintiffs are residents of Lexington County, South Carolina, with a residential address of 271 Danby Court, Columbia, South Carolina 29212 (hereinafter the "Property"). Plaintiff Joel Davis is an honorably discharged disabled veteran and his wife, Kendall, is a Director of

3

Academic Technology at the University of South Carolina Joseph F. Rice School of Law, Plaintiffs have two minor children who live with them.

12. Plaintiff Joel Davis purchased the Property in 2014 subject to a VA loan originally secured by lender PMAC, which was later taken over by AmWest. The loan is serviced by Nationstar, and Plaintiff obtained home insurance through State Farm pursuant to the original loan terms.

13. On or around March 11th of 2023, Plaintiffs' Property and primary residence caught fire, through no fault of their own.

14. Plaintiffs initiated a loss claim through their home insurance policy with State Farm at that time and were informed that their policy in effect covered the replacement costs of the property as well as coverage for additional living expenses (hereinafter "ALE"). Plaintiffs were informed that the policy would cover temporary housing by State Farm as well as mitigation costs, and restoration relative to same. The Plaintiffs' policy with State Farm contained a coverage limit for their dwelling of Two Hundred Sixty-One Thousand Five Hundred Dollars ($261,500.00), a limit for personal property damage in the amount of One Hundred Ninety-Six Thousand One Hundred Twenty Five Dollars ($196,125), and a limit for loss of use in the amount of Seventy-Eight Thousand Four Hundred Fifty Dollars ($78,450.00).

15. State Farm placed them in temporary housing at Residence Inn Northwest Columbia/Harbison, owned by Marriott, beginning March 18th, 2023, and initiated the loss claim process.

16. State Farm then sent out an agent, Corey Galloway-Smith, a claims adjuster, who initially calculated that the entire loss would cost approximately $151,826.81 to repair. This estimate

was not based upon the actual value of the property, nor did it contemplate the renovations made by Plaintiffs to the dwelling in the past several years, and in any event, was not reasonably calculated to cover their losses. At the time, however, Plaintiffs, having been displaced from their family home, with all of their priceless possessions and tangible belongings destroyed, who had never had to go through this prior to the fact, felt that they had no other choice than to take the estimate to quickly begin the restoration process.

17. State Farm's agent also sent out a local contractor through ServiceMaster for the mitigation of the loss, and sent the loss claim funds to Plaintiffs' loan servicer, Nationstar.

18. Plaintiffs were informed by Nationstar that they would be responsible for the regular monthly payments on the loan throughout this process, and were told by agents of Nationstar that they could only use Safeguard as the inspection service for the loss, and that each time an inspection was required for a loss claim draw, they would be responsible for paying Safeguard for the inspection report prior to uploading the required documents on Nationstar's designated online loss claim portal.

19. On or around June of 2023, Plaintiffs became concerned when ServiceMaster hired an attorney to file suit against them personally due to the fact that State Farm had not remitted payment directly to him for his work. Plaintiffs, who were frequently visiting the property, also noticed that a number of items that were supposedly mitigated by ServiceMaster had not actually been performed. While the payment issue was pending, the home was exposed to the elements and no work was performed, nor were payments issued to Plaintiffs relative to completion of same.

20. Plaintiffs worked diligently with State Farm and Nationstar to understand why ServiceMaster was having trouble receiving payment, and also requested that Nationstar and State Farm look into the items that were left unfinished prior to releasing funds relative to same.

21. Plaintiffs also reached out on several occasions to the Safeguard agent assigned to inspect their property, who was based out of Ohio and purportedly worked remotely. The Safeguard agent did not timely respond to requests for information relative to the mitigation work and/or progress generally and refused to answer calls or text messages from the Plaintiffs relative to same.

22. In late July of 2023, Plaintiffs hired counsel to assist them with the procurement of funds from Nationstar and to assist them generally with the mitigation outstanding work and payments, and the lack of response from Safeguard.

23. In August of 2023, Plaintiffs' counsel sent a letter to Nationstar informing them of the representation and requested that information be provided to Plaintiffs with respect to the lack of communication from the inspector by Safeguard, among other issues, and specifically as to why timely disbursement of funds to continue the work had not been issued. Plaintiffs also requested an abatement on the monthly loan payments to Nationstar due to the circumstances, which was later denied.

24. After receiving no response from Nationstar, Plaintiffs through their counsel filed a complaint against Nationstar with the Consumer Financial Protection Bureau (hereinafter "CFPB") regarding their unwillingness to communicate timely, disburse funds, in addition to its insistence upon Plaintiffs using an out of state inspection service that would not respond to their requests for inspection.

25. Plaintiffs did not hear back from Nationstar, and later learned from the CFPB directly that Nationstar had answered the complaint. Plaintiffs had to call CFPB and request that the response be provided to them directly, and their response indicated that Nationstar reviewed the file and found no issues with the administration of the loss claim and/or Safeguard's negligent inspection service.

26. During this time, Plaintiffs were informed that because ServiceMaster left the home exposed, there was now termite damage in the property that previously did not exist, and further, that State Farm would not cover this damage due to the delays in payment processing by Nationstar.

27. State Farm's agent also informed Plaintiffs that their ALE coverage would expire in the fall of 2023, and Plaintiffs and counsel worked to extend the ALE coverage timeframe, and also attempted to locate a general contractor in the area that would restore the property, provided ServiceMaster resolved the outstanding issues.

28. Plaintiffs purchased replacement appliances in the fall of 2023 on sale with funds on hand received and stored them, thinking that they would be able to place them in the property as early as the beginning of 2024, when the project was anticipated to be completed.

29. After reaching out to several contractors in the area, Plaintiffs finally acquired a contractor, who informed them that in fact the cost of replacement to restore the property remained in excess of $60,000.00, substantially over the original adjuster's estimate from State Farm at the time of the loss.

30. Plaintiffs reached out to the agent at State Farm to share with them their costs of living expenses due to the displacement, the loss claim basis that came in substantially less than what was necessary for restoration from the loss, and to question the ALE coverage

expenses. Plaintiffs did not receive a response from the agent at State Farm relative to these inquiries.

31. At this time, Plaintiff Kendall Davis and their children have lived in a short-term hotel in one room for almost fifteen (15) months, through no fault of their own. Plaintiff Joel Davis, a veteran that suffers from PTSD, moved out of the one room hotel occupied by his family in early 2024, and erected a tent at the property to seek space from his family's close quarters, given his anxiety issues and overall concerns about the lack of progress as to their home's completion.

32. Plaintiffs were informed in February of 2024 that State Farm would no longer cover any other ALE expenses and have had to pay for their own accommodations outside of that period out of pocket. Despite requesting and receiving all statements paid by State Farm to Marriott for their prolonged stay, Plaintiffs have calculated the receipts to discover that they are not in excess of their initial coverage limits. While they have requested a response from the State Farm agent to determine why the coverage was terminated, they have received no response relative to this request at the time of the filing of this complaint.

33. Further, since State Farm has failed to provide a reasonable explanation as to why the estimate was substantially lower that necessary to restore the property, Plaintiffs are unable to pay their contractor to finalize the work and allow them to return to their home in a timely fashion.

34. To make matters worse, Plaintiff Kendall Davis and her children began coughing in the spring of 2024, and after contacting management at Marriott with concerns about possible mold in their room to no avail, they then individually hired a mold inspector to come out and

look at the hotel room, who discovered that there were extremely high counts of mold spores detected in the room, giving rise to their chronic coughs, sneezing, and headaches.

35. Plaintiffs have expended countless hours attempting to work out matters that should have been addressed by the companies that they contracted with to manage the above matters to no avail and have experienced substantial distress throughout the process by each Defendant who has individually breached their contractual obligations to Plaintiffs, to their detriment.

## COUNT I: **BREACH OF CONTRACT**

36. The preceding paragraphs are incorporated herein by reference.

37. Defendants, by and through their designated agents, were contractually obligated to provide services to Plaintiffs pursuant to the loan agreement, service contracts, accommodation agreements, and homeowners insurance policy agreements in the event of a loss.

38. Defendants, jointly and severally, have intentionally and unconditionally refused to comply with the terms of their contract with Plaintiffs.

39. As a result of Defendants' failure to adhere to their obligations under the contract with Plaintiffs, Plaintiffs have incurred damages, for which Defendants are jointly and severally responsible.

## COUNT II: **BREACH OF FIDUCIARY DUTY**

40. The preceding paragraphs are incorporated herein by reference.

41. Defendants, by and through their designated agents, contractually owed Plaintiffs a fiduciary duty to promptly administer funds as a result of their loss claim.

42. Defendants, by and through their designated agents, breached that duty affirmatively and also through their willful and bad faith acts and/or omissions, failed to promptly administer funds and/or provide reasonable explanation as to why funds have not been authorized to restore or

provide services concerning the restoration of Plaintiffs' property or reasonable accommodations during the restoration, fully, pursuant to each entity's contract with Plaintiffs.

43. Defendants joint and several breach of their fiduciary duties in this case are both the proximate and actual cause of Plaintiffs being damaged.

44. Plaintiffs are therefore entitled to damages as a result of the breach of fiduciary duties by Defendants, jointly and severally.

## COUNT III: **NEGLIGENCE**

45. The preceding paragraphs are incorporated herein by reference.

46. Defendants, by and through their designated agents, contractually owed Plaintiffs a specific legal duty of care to Plaintiffs to promptly administer funds and/or provide services commensurate with the total loss as a result of their home being destroyed by fire through no fault of their own.

47. Defendants, by and through their designated agents, breached the duty of care by negligently failing and/or negligently delaying to administer and/or contract with third parties to timely complete work, provide appropriate safe accommodations, and/or compensate Plaintiffs with funds necessary to fully cover their losses, in addition to willfully and in bad faith omitting information necessary to be conveyed to Plaintiffs to assist them, in keeping with the duty of care owed to Plaintiffs.

48. As a proximate and actual cause of Defendants' joint and several breach of each entity's duty of care owed to Plaintiffs, Plaintiffs have been damaged.

49. Plaintiffs are therefore entitled to the damages they have incurred as caused by the negligence acts of Defendants and/or their agents resulting in damages to Plaintiffs.

## COUNT IV: <u>BREACH OF CONTRACT ACCOMPANIED BY FRAUDULENT ACTS</u>

50. The preceding paragraphs are incorporated herein by reference.

51. Defendants, by and through their designated agents, breached their contractual obligations to Plaintiffs as described more fully herein.

52. Defendants, by and through their designated agents, breached their contractual obligations to Plaintiffs with wilful and fraudulent intent, specifically by failing to compensate Plaintiffs for loss claims in accordance with the contracts between the parties.

53. Defendants, by and through their designated agents, breached the contract with fraudulent intentions to retain funds that should rightfully be paid to Plaintiffs.

54. Defendants, by and through their designated agents, breach of the contract was accompanied by fraudulent acts, specifically in that the Defendants have willfully and intentionally concealed and failed to disclose third party communications and contracts entered into by the Defendants (supposedly for Plaintiffs' benefit), that had those acts not occurred, would have resulted in timely and appropriate compensation pursuant to the contracts between the parties.

55. As a direct and proximate result of the breach and the fraudulent acts engaged in by Defendants, Plaintiffs were damaged.

56. Plaintiffs are therefore entitled to the damages they have incurred as caused by the breaches of contract by Defendants through their agents, resulting in damages to Plaintiffs.

## COUNT V: <u>BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</u>

57. The preceding paragraphs are incorporated herein by reference.

58. Defendants, by and through their designated agents, breached their contractual obligations to Plaintiffs as described more fully herein.

59. Defendants, by and through their designated agents, each had mutually binding contracts with Plaintiffs in writing to provide services pursuant to same.

60. Defendants, by and through their designated agents, breached their obligations under the written contract with Plaintiffs by refusing to pay benefits timely or at all due under the contract.

61. Defendants, by and through their designated agents, in bad faith and/or by engaging in unreasonable actions in breach of the implied covenant of good faith and fair dealing in each respective contract with Plaintiffs.

62. As a direct and proximate result of the breach of the covenants of good faith and fair dealing pursuant to willful acts engaged in by Defendants through their designated agents, Plaintiffs were damaged.

63. Plaintiffs are therefore entitled to the damages they have incurred as caused by the breaches of contract by Defendants through their agents, resulting in damages to Plaintiffs.

**COUNT VI: <u>VIOLATION OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT</u>**

64. The preceding paragraphs are incorporated herein by reference.

65. Defendants, by and through their designated agents, by engaging in the conduct described herein, engaged in unlawful trade practices by knowingly employing unfair and deceptive acts in the conduct of trade and commerce.

66. Defendants, by and through their designated agents, each had mutually binding contracts with Plaintiffs in writing to provide services pursuant to same.

67. Defendants, by and through their designated agents, caused Plaintiffs to suffer actual, ascertainable damages in the form of monetary and property losses, as a result of each Defendant's use of unlawful trade practices as well as unfair and deceptive acts in the conduct of trade and commerce.

68. Defendants, by and through their designated agents, have engaged in such willful and knowing violations of unfair and deceptive conduct, not only by creating procedures that more than likely have occurred in the past, but that are designed to continue to occur absent deterrence, such that the actions by Defendants has an adverse effect on the public interest.

69. As such, Plaintiffs are therefore entitled to treble damages for the amounts they have incurred as damages caused by the violation of the South Carolina Unfair Trade Practices Act by Defendants, through their agents.

## COUNT VII: **ATTORNEY FEES**

70. The preceding paragraphs are incorporated herein by reference.

71. Defendants, by and through their designated agents, by engaging in the conduct described herein, were aware of the fact that the claims of Plaintiffs were fully covered.

72. Defendants, by and through their designated agents, each had mutually binding contracts with Plaintiffs in writing to provide services pursuant to same.

73. Defendants, by and through their designated agents, failed to compensate Plaintiffs for their losses pursuant to the contracts without reasonable cause and in bad faith.

74. As such, Plaintiffs are therefore entitled to their attorney's fees incurred as a result of the conduct of Defendants, by and through their agents.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs requests judgment in their favor and against Defendants Nationstar Mortgage, LLC DBA Mr. Cooper (hereinafter "Mr. Cooper" or "Defendant 1"), AmWest Funding Corporation FKA PMAC Lending Services, Inc. (hereinafter "AmWest" or "Defendant 2"), State Farm Fire and Casualty Company (hereinafter "State Farm" or "Defendant 3", and Safeguard Properties Management, LLC (hereinafter "Safeguard" or "Defendant 4"), and Marriott Bonvoy Boutiques, LLC, (hereinafter "Marriott" or "Defendant 5"), individually, jointly and severally, concerning statutory damages, actual and punitive damages, attorney's fees and costs, and for any such further relief as the court deems just and proper.

## JURY DEMAND

Plaintiffs requests a trial by jury on all issues so triable.

                                      Respectfully Submitted
                                      Joel and Kendall Davis
                                      By and through their counsel,

Dated: June 4th, 2024                */s/ Julie A. Franklin*
                                      Julie A. Franklin, Esq. (SC Fed. Id. No. 13933)
                                      Franklin Legal Services, LLC
                                      D/B/A Law Office of Julie A. Franklin
                                      PO Box 2976
                                      Bluffton, SC 29910